Good morning. Yvonne Ward for the appellants. Good morning. I do intend to reserve our watch and my clock. Okay. The right to make child-rearing decisions is the oldest fundamental right under our constitutional jurisprudence. It is both a liberty interest under the 14th Amendment and a fundamental right under our privacy laws. And that is the case we have here. We have parents with special needs children and non-special needs children who have sought out and found a good care provider using their judgment as parents. And the state now says they may not use her. If they do, she will be criminally and or civilly charged. This case involves the parents' rights to decide who cares for, raises, and nurtures their children, and these parents are fit. Are your clients the parents? Both, the parents and the daycare providers, and actually the minor children that were at the daycare. All right. Thank you. Under Meyer, Pierce, and Troxell, the state-declared licensing scheme should not stand to the extent it impedes those rights. This case falls clearly within Meyer, Pierce, and Troxell. In Meyer, it was the teacher teaching German who was criminally convicted, and it was he who brought the case, and the court said his right to teach and the parents' right to engage him for their children are within the liberty interests of the 14th Amendment. And to penalize Meyer was a material interference with the power of parents to control their own children. That is the case here. Ms. Bogosis has her right to her occupation, to provide care, coupled with the parents' rights to hire her for that most intimate and personal and sacred right of child-rearing decisions. It falls squarely within Meyer. It also falls within Pierce v. Society of Sisters, where again it was the providers who brought the case. The schools who the state said you cannot teach children, children can only be taught in who we approve as public schools. Does your argument suggest that if a daycare provider maintains an unsafe condition, nobody would dispute that it was unsafe, that if the parents choose to nonetheless send their special needs children to that facility, then they have a First Amendment right to do so? They would have that right, although it would be subject to their exposure to negligently endangering their own children under dependency laws. The state, under your theory, has no right to regulate the safety and health conditions, and it's all up to seeking remedies against the parents for exposing their children to unsafe conditions? Not that far. If there's an imminent risk, the law is really clear that the state has a compelling interest to prevent an imminent risk to children, and that's primarily abuse or imminent harm, and that's introxal. They discuss that. So, of course, the state can intervene when that happens. The problem we have here is we have no such imminent risk of harm, and the problem we have here is the daycare licensing scheme goes so far beyond the risk of imminent harm. It goes to every level, and it's deciding who the parents can take their children to. This case – okay. I'm sorry. Deciding who the parents can pay to take their children to. I'm sorry? Can pay to take their children to. Yes. Actually, the state statute also regulates it, whether or not there's compensation. But there are numerous exceptions for the people that you would ordinarily not pay. Actually, if it's on a regular basis, under the current law, 43-215-010, which is similar to the prior law, if it is done on a regular basis, with or without compensation, then it has to be licensed. The exemption is if it's not on a regular basis. Therefore, a babysitter with an ongoing appointment to babysit, or you drop your child off at – it actually applies to out of home. So if – Excuse me. Are you arguing vagueness or overbreadth or what? Vagueness, overbreadth, but also overall attacking the right to interfere with the parents' rights is the core argument. And it is overbroad. It is vague. The issue of character is vague. And the state – our state Supreme Court has said character is something that is inherently subjective. And that's what happened in this case, in the end, is they went after character. Let me ask you some questions about the procedural posture of this case. Yes. Has the agency final determination occurred yet? I'm sorry? Has the agency's final determined hearing on the appeal occurred yet? The agency, we went through the administrative process. We had the ALJ decision, which – Right. Because as of the time of the briefing, there wasn't one. Correct.  Okay. Nine months past the statute. And when was it? And he found character, truthfulness. No risk. When was this? That was this last summer, I think. Or maybe spring or fall. Was there an appeal from – a state appeal from that going on? Yes. I filed – went to the Board of Review, which is an internal DSHS review process, which affirmed, of course, the revocation of the license. And then I have filed in state court under the Petition for Judicial Review provision of the Administrative Procedure Act to now review that. Now, there is an injunction as a result of this case against state court proceedings. Is anybody arguing it occurs to that – applies to that? I would like that clarified here. They have not raised that in the state court proceeding yet. And that is something that I was going to talk about in the enjoyment section, is they have cut off – if that enjoyment stands, they have cut off my right, if it's read that way, to even appeal from the administrative process. That was one of the things I was trying to find out. But the answer is we don't know because why? There's no answer been filed yet in the state court? They don't file an answer. We file an opening-type brief, and then they file a response. They could have brought a motion. I don't know what their intent is. The counsel for that case is present as well here, but I don't think she's arguing. So I don't know what the state's intention is. But it is on my mind, and I did want to raise that. I did want to point out that this case falls squarely – Just further. Except for that, does the injunction matter anymore? Yes. Because it goes to the state's argument about whether a post-deprivation remedy is available. No. The injunction against the state court proceeding. Yes. Because they argue there's state common law tort options available to justify the lack of a pre-deprivation hearing. But those torts were filed, and the injunction, the final injunction as Judge Gilley entered it is just like, you can't bring anything. So we cannot now pursue that unless and until this court reverses that. You alluded in your briefs to why you did it this way. Yes. And you weren't that specific, so it would be helpful to me to understand why you went ahead and dismissed the state claims out of the state, the federal. Right. After the court denied remand, that happened, fine. We let that stand. And then what happened is there's a 60-day notice of claim requirement in the state, and that had not yet perfected at the time we filed some of our claims. But it had perfected by the time of the remand? By the time of the denial of the motion to remand? Yes. Okay. So was this your problem that you were concerned that they were going to argue that even though it was now ripe, it wasn't ripe when you filed it? Yes. And so you would have to file again? Yes. And that you couldn't file again in federal court because there were state claims? That was exactly it. And I actually sent the record show's letter saying, can we all agree that this would be ripe and this would all be heard in federal court? I actually tried to get everything heard in federal court. Did you ever explain this to the federal judge what the problem was? I did. And did you ask him whether you could simply strip out the state causes of action and amend the complaint in that fashion? No. No, we did not. No. Right.  Correct. We did not ask. What we did is I filed a motion to amend the complaint. Not in this respect. Correct. I wanted to bring everything. I wanted to say everything's ripe. The state claims are now ripe. And I wanted it heard in federal court. And then the state opposed my motion to amend the complaint and would not waive the ripeness argument. So now I'm in this dilemma. I have to file my now perfected claim somewhere. And the only reason, why couldn't you just wait until the district court decided the question? Because there was no state court ruling on whether relation back counts. There was no, it was an open question, and I argued this to the judge that because the case had already started, the state was going to argue or could argue that that's too bad. You have to file a separate action. And that's what most lawyers do in my practice, is if we've got an open question, we will file one, and then we'll find another and then move to consolidate. And I was thinking that at some point, but it never got that far. We got enjoined. So. Because you were concerned about a limitations period problem. Yes. That was another issue. And the city wasn't going to waive that as well, and that's in the record as well. We had a lot of procedural problems. And that's why the ruling can't stand, is there was no, the court never found fraud. The court said that the plaintiff did this to subvert federal jurisdiction. And that's something we challenged, because the record shows we were trying to get everything heard in the federal court at some point once everything was perfected and the defendants weren't willing to stipulate in the way that we thought was going to be necessary to preserve our claims. In terms of the right to association, the. . . Are you going to argue the procedural due process question? Pardon me? Are you going to argue the procedural due process issue? Yes. Would you like me to go there now? Okay. There has to be a right to a pre-deprivation hearing. And the state argues you can, after the deprivation, go try to get a stay. There's nothing in the law that allows a specific pre-deprivation hearing The only thing that's allowed is if the DSHS decides to revoke a license and give you 28 days before it becomes effective, if you then file with the agency for a hearing, then it's stayed. But if they give you less than 28 days, it's immediate, and you have to go find someone, either an ALJ or a judge, to then try to stay it. But by then, the deprivation has happened. It's immediate. And what the law says is you have to show it's impractical to provide a pre-deprivation hearing. Again, we do not argue that if a child is abused or hurt in a daycare, there's an imminent risk, then it's not practical to have a pre-deprivation hearing of a suspension. But in a case like this, where the issue is should Stephen Pegasus be around or not, that is something that needs a pre-deprivation hearing because there is no imminent risk to children. The man has not raised his own children. He has not ever been found by a court not to have access. And he was only not allowed on the daycare premises during daycare hours per an agreement, not by law. And the risk of error here was proven because the basis of the summary suspension was she's letting Stephen Pegasus around the kids. CPS investigated that and found it was unfounded. Not inconclusive, but unfounded. The other basis was that she failed to report changes, and she did. So that's why a pre-deprivation hearing is necessary unless it's not possible due to some imminent risk. There's a background issue, which is whether this is the kind of an interest that gives rise to a need for process at all. And I gather that there's kind of two pieces to that. One is there is a state Supreme Court case pending at the moment, which is relevant to that. And secondly, they're now saying that this wasn't really a suspension at all. It was simply a denial of a new license, which seems technically to be true, but not the way the case was litigated until now. Well, they raised it on Thursday, and we haven't had a chance to brief that. However, the statute does say a license shall be granted if you meet the requirements. That's 74-15-100. So we haven't litigated or briefed that issue. But the point is she was allowed to have her carryover license, and all the actions say they revoked her license. DSHS in July said we're revoking your license. We're suspending your license. In each case, they're acknowledging there's a license. And so the other thing is there's also under state law. Excuse me. You're going to be out of time, so keep that in mind. All right. The right exists under federal law under Meyer, common occupations of life, Stratton, the right to practice your profession, and Inquist, a substantive due process right to the extent it precludes your practice in the field. And that's what's happened here. She cannot provide care with this revocation. Therefore, she clearly has a property right, regardless of whether there's a license, because it goes beyond that. Ditman as well, a right to pursue your calling. You're going to run out of your time. Qualified immunity. Okay. The law is similarly situated, and they're treated differently. Here is a matter, undisputed. Ms. Pagosis was similarly situated to other businesses in Auburn by defendant Joyner's own admission. And he says we always give, or the policy is to give, leeway, let you do your business, if you've filed for it. And that cannot stand unless there's a rational reason for the district treatment. They have not provided one that's under the city code. However, we've rebutted that successfully by the improper motive, the retaliation after she filed a complaint. So it should stand. One last question. I don't quite understand why this is being litigated as a class of one equal protection issue and not as a First Amendment retaliation issue. Correct. Is there a reason for that? The reason for that is I don't remember, just to be real honest. Right. And again, we also had the set in motion, if the court finds that there were rights violated, that we did properly preserve that the city set in motion, or Mr. Joyner set in motion. Okay, thank you. Yes, thank you. Good morning, Your Honors. May it please the Court, I'm Victor Menjarez. I represent Patricia Long and the state of Washington's child care agencies in this action. I want to talk about three things today. One is the FACTS collateral estoppel that's come into play. I want to talk very briefly about statutory jurisdiction. And finally, I want to talk about procedural due process, and I want to spend the majority of my time on that. First of all, the administrative proceeding in this case has been going on in parallel with this federal action throughout this whole time. And at the time of the briefing, there was no final decision. An initial order had come out, but it's not final. It never became final because it was appealed for a review decision. But the review decision came out on October 23rd of last year. And in the state of Washington, collateral estoppel and res judicata apply to final orders of an administrative entity. And those resolve many of the issues raised in counsel's briefs, where she says that Patricia Long didn't go to the House on April 12th. Has anybody given us a copy of that order? No, Your Honor. And what are we supposed to do with your argument? Nothing. Well, I'm going to ask the Court to take judicial notice of that. If the Court feels that those facts are in any way helpful, then I would ask the Court to take judicial notice of that. What is your position about whether the pending proceeding with regard to that order is enjoined by the district court's injunction? Not covered at all. The only thing that the injunction covers are the claims that had been removed that she stripped out and refiled in King County under that case number. In fact, the order of the injunctive order specifically lays out what the case number is. It doesn't affect the administrative action at all. And nobody has ever claimed that it has. Now, you just said this administrative appeal has become final? Yes. Now, isn't there a right to then to get judicial review of that? Yes, and there is judicial review pending of that. Does that mean it's not final then? No, it does not under Washington law. As this Court knows, it is the state law on res judicata and collateral estoppel that's applied by the federal court in analyzing that. And under Washington law, a final order, even when it's still on appeal, has collateral estoppel and res judicata. That issue of collateral estoppel hasn't been briefed to us, so we don't know what the law is in Washington law. Is that right? It hasn't been briefed? No, that issue has not been briefed because the final order did not come out until after the briefing. Yes, but this is now March, right? That was October. Have you heard of 28J letters? Yes, Your Honor. Well, the reason I didn't file a 28J letter is because certain statements of material fact were made to the Court in the briefing. And under RPC 3.3, Ms. Ward had an obligation to then let the Court know that a final order had been issued. And I was hopeful that she would do that on her own. I talked to her back in March. This is March. I'm sorry, last March, whether she's going to do that. Instead, she filed an appeal so the order didn't become final until October. Well, I'm mystified why you're raising this argument, an oral argument. What do you expect us to do with it? Go find the order or what? No, I have the order. I don't feel the Court needs to look at the actual facts as determined, even though they're adverse to Ms. Ward's position. But if the Court feels it would be helpful, I would be happy to have it. I don't know how we can make a judgment whether something's collaterally stopped or material if we don't have the document you're relying on, that's all, or the argument you're making. All right, so why don't you proceed then as to what is before us. All right. I'm going to point out that this matter is only here on declaratory relief. There is no claim for damages pending in the Court. So the only possible way that this matter could be before here, at least against the State, would be through Ex parte Young. Did you brief that issue? No, I did not. Let's stick to the things that you did brief, perhaps. Yes, Your Honor. I'll move on to the due process argument then. The initial prong is whether or not there's a property interest involved. The Washington Supreme Court case now pending, which seems to be important to that question. Do you agree with that? No, I disagree with that.  The reason is that I think you're referring to Hardy. And in the Hardy decision, that involved a license that was particular to an individual. And in this case, we're not dealing with that. We're dealing with a license that is linked to two things. One is a location that's licensed and approved. If it wasn't a child care case, it wasn't the very issue in the Court of Appeals, whether that was the case wasn't the Court of Appeals' reason for not following the earlier cases, that they regarded it as a location rather than a personal license, and that now the issue has been taken by the Washington Supreme Court. Well, that wasn't the main issue. The main issue was whether or not to characterize what the level of review would be for revoking the license. Yes, but the reason that mattered, that was a question that depended, according to the Washington Court of Appeals, on what kind of a license it was. The issue there was whether to revoke based on the background and interest of the person involved, and the level of review for analyzing that. And in that case, there was a dispute over whether it was a preponderance or clear and convincing evidence. And that has nothing to do with the issues before the Court here as to whether or not those procedures were adequate. Well, it could in the way that, in other words, the Washington Supreme Court could draw a line somewhere as to how far the clear and convincing it extends, right? And when it does that, it could start characterizing certain kinds of licenses. Isn't that right? Well, that would be... And then if it does that, it would impact this case, possibly. Well, we could theorize, but in Hardy, I don't believe that there was a move from one location to another, which we have here. That's the problem we have here. There's two aspects to a family daycare home license, and one is a licensed place and the other is a licensed person. And both of those items go into the license. So that's... But anyway, it's your position that Hardy had nothing to do with this case. The decision in Hardy... Well, the decision in Hardy on the Court of Appeal, I don't know if you're referring to... Yes. I'm talking about the potential Supreme Court decision. That I can only theorize about. That's right. The decision in the Court of Appeal did point out the fact that it's linked to a license, a licensed location. However, you sent us a letter on September 14, 2009, right? And it said that you submit Hardy because it supports our argument that the rational basis test is the appropriate standard for reviewing the constitutionality as child care licenses are not professional licenses under state law. It prevents newly minted authorities supporting state defendant's arguments and such and such and such and such. And you go on to talk about it. Now you're telling us it isn't relevant. Well, as you pointed out, Judge Berzon, the license was... One of the items in Hardy was the fact that it was linked to a location. And that was an additional reason to cite Hardy. Now Hardy is no longer authority because it's been taken up on review. And I have no way of predicting whether or not the state Supreme Court is going to address that issue or simply decide whether or not it's... simply decide that it's not relevant. I do want to address, though, that because we have an action for only declaratory relief here, there are no grounds to grant retrospective relief. That's not allowed under Ex parte Young. And what she's complaining about under the old statutes cannot be granted. She's asking this court to say that past actions were unconstitutional, and that's not allowed under Ex parte Young. The prospective relief she is asking for is not something that's available. I mean, she's not asking for any injunctive relief whatsoever, so it doesn't fall under the umbrella of Ex parte Young. Are you going to address the Class I, or is your co-counsel? My co-counsel is. Are you going to leave her any time? Yes, I am. Thank you. One last thing. I'd like to ask the court... I have one other procedural process question. Sure. All the way through this case, the letters, the issue was treated as a suspension or replication of a license, and then last week you sent us a letter suggesting that that's not what the case is about at all. What are we supposed to do with that? To review the authority cited and see whether it is independent grounds for affirming the judgment of the district court. I fail to see how the state giving more due process than what Ms. Bagaxis was entitled to stops the state from any way in pointing out that under the law she didn't have a license at all, therefore there's no property right. If there's no property right, then there's no basis for a due process violation. All right. I'd ask the court to take judicial notice of WAC Chapter 170-03 and 06, which are background and administrative hearing WACs. Thank you very much. You're welcome. Good morning, Your Honors. Mary Ann McConaughey. I represent the City of Auburn and Code Enforcers Dunbar and Joiner. It looks like I don't have a lot of time. I will get right into the Class of 1 issue, which is the cross-appeal issue that we raised on behalf of Code Enforcer Joiner. I'm going to assume that, well, let me just briefly say that the argument is that- I know what the facts are. Why don't you just get to it? Okay. Essentially, under the law, this is-because there's no suspect class, all we need to show is a rational basis for the decision to require Ms. Pagassis to stop operating her daycare pending DSHS licensing. The case law has a second prong, which is this malice, bad faith prong, being that-in other words, that even if you might have had a rational basis, if that wasn't the real basis. The pretext that was set out in the Squaw Valley case. I believe that looking at it, the Squaw Valley case is the only case that I'm aware of that talks about that. I believe that that is in direct contradiction to the long-standing position that was set forth in Harlow v. Fitzgerald. Well, that may be, but it's our precedent. So how are you going to get us around that? Well, then what we have is the unique situation in this case. Maybe you can persuade Judge DeShamis. In this particular case, there was a long history of violations. We have a code enforcer that has one contact with Diana Pagassis, and I realize there are going to be disputed facts about what happened in that context. And he made what I think is the eminently rational decision that given the long period of code enforcement problems at this house and a prior assault on a code enforcer by Steve Pagassis, this was not a good place to allow children to be until DSHS said that it was okay. But all we're talking about now is a denial of summary judgment, right? Right. That's exactly what we're talking about. The question is whether there's a contrary inference that one can draw from the record. I mean, you could be perfectly right and the jury might believe you and you could win, but the question is whether there is some contrary inference that could be drawn from the record. Well, and essentially it comes down to then whether the rule of the Ninth Circuit is that no matter how rational the underlying decision is, how many good reasons for it, if the person who made the decision has a bad motive, even though the decision was There has to be some objective evidence of it, and I think at least I would read it that way. And the court cited, didn't Gisele point out that there were the phone calls? And I think he went into some Well, as I understand it, the argument is that there was, when Joyner was out the day talking to Pagassis, she actually had called in and complained to his supervisor about what happened and that he learned about that when he got back to the office. And my understanding is that that is the evidence that they're going to put forward of the so-called bad motive or, you know, subjective bad faith. Well, combined with the fact that he became awfully zealous at that point in that he, I mean, the allegation is that he went to her house every day and he, I mean, all of which may not be true, but that's what she says, and he made phone calls to people that he might not otherwise be interested in, and he just was extremely active beyond what one might think a code enforcer would do. That's the contention. Okay, that is the contention. And I think it's also important to point out in this case something that, frankly, it's right there in the record. I didn't bring it out as much as I could. But when he told her, remember, what he supposedly did different with respect to her is told her, you've got to stop operating because you don't have a business license, and our law requires you to have a business license. But, true, we typically allow people to continue operating a business, even though they've opened it without a license, as long as they go through the process of getting a license. Okay, so he told her to stop operating on April the 10th. In her record, and it's in the ER-126, she admits that she ignored that. She continued operating his daycare, even though he said she needed to stop on April 10th until April 18th, which was the day she got the suspension letter from DSHS. She totally ignored, you know, the distinctive thing that supposedly he did different with respect to her as compared to everybody else. Now, you're right, the case law that we have in Squaw Valley talks about pretext. In other words, you can look at the rational basis, even if it's totally rational, you can understand it, and an objectively reasonable person might have done the same thing. You can still- Precisely, and this is why I asked the question I asked before. What she's really saying was retaliation for speech. So it's something more than simply free-floating malice. Okay, well, there is another issue about retaliation for speech. Who was he speaking to? He was speaking to the agency that licenses daycares. He wasn't going out with pickets and, you know, telling the public that she was a bad person. He is an official of the city of Auburn. He's calling DSHS to say, look, let me tell you what we know about this property. Now, it is our position that that is- I've written them, retaliation cases in which, for example, which are allowed to go forward at least, where somebody complains to, is nasty to police, so police go and bring charges against somebody. That is a viable- Well, when you bring charges against somebody- I'm going to let you answer that question, but we're running over time on this. When you bring charges against someone, there's an action that has been taken. And in this case, the only action Joyner could take was on the license, the business license, which he ignored. He couldn't control DSHS. And the suspension and revocation letters, which are in the record, they're very detailed, they specifically spell out why DSHS was suspending the license. And it doesn't say because Mr. Joyner has been telling lies about you. All right. Thank you. Thank you, Ron. I'll give you a minute to respond, or two minutes maybe, to respond on the class of one. I do not believe that they argued for reversal of Squaw Valley in their briefing, and I don't think Squaw Valley is the only one that talks about it. But the point is that there were a number of reasons to find that the stated reason was pretext, and that was the report to the supervisor and then the constant harassment afterwards. That as facts, those are uncontested facts, at least for purposes of summary judgment. They'll probably contest him at trial. They did not contest him sufficiently. What was that harassment, just that they kept coming to the location? Well, then he was calling CPS. Because remember, he called Harriet Martin, the licensor, first, and she said, well, I'm not going to go out for a couple weeks. Then so he ratcheted it up and called the CPS child abuse hotline. And then he called the supervisor, Patricia Vesey. That's all in his log. Why is that inconsistent with somebody who's just concerned about kids? Because he is going beyond. It's evidence of his harassment against her. The law doesn't say the harassment subsequent that shows bad motive has to be illegal. It just has to show facts of his motive. Is it true that she refused to stop even though he issued her the warning? I didn't see the refusal to stop. What she did say, I just took a quick look at the declaration, is that, you know, she started her daycare and then she was trying to run it and then she definitely stopped when she was given the suspension letter. I think you can assume that she kept running, you know, because of the way her declaration was phrased. But I think the key thing is Mr. Joyner never had authority to deny a license under the city code as he stated. Okay. All right. Thank you. Thank you. Thank you for the argument. Thank you.
judges: Tashima, Fisher, Berzon